UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DEBORAH BELLE,<br>Individually, and on behalf<br>of all others similarly situated, | )<br>)<br>)<br>) | |
| Plaintiffs, | )<br>) | NO. L 02 CV 3309 |
| v. | )<br>) | |
| NCO FINANCIAL SYSTEMS, INC.,<br>A Pennsylvania Corporation | )<br>)<br>) | |
| and | )<br>) | |
| JOHN DOE | )<br>) | |
| Defendants. | ) | |

### RESPONSES TO PLAINTIFF, DEBORAH BELLE'S
### FIRST SET OF INTERROGATORIES

NOW INTO COURT, through undersigned counsel, comes defendant, NCO Financial Systems, Inc., ("NCO"), and in response to Deborah Belle's first set of Interrogatories, respectfully avers:

1. State the name(s), business address(es) and job title(s) or capacity (ies) of the officer(s), employee(s), agent(s) or any other person answering or providing any information used to answer each Interrogatory.

**RESPONSE TO INTERROGATORY NO. 1**

NCO objects to the Interrogatory as overbroad. Notwithstanding said objection, answers to these Interrogatories were prepared by Brian D. Roth, Sessions Fishman & Nathan, L.L.P., 201 St. Charles Avenue, Suite 3500, New Orleans, LA 70170 from account records and investigations by Lisa Signore, Compliance Manager, NCO Financial Systems, Inc., 507 Prudential Road, Horsham, PA 19044; Al Mucci, Vice-President, NCO Financial Systems, Inc., 500 North Franklin Turnpike, Ramsey, NJ 08026; James Prawel, General Manager, NCO Financial Systems, Inc., 150 Crosspoint Parkway, Getzville, NY 14068; Betty Capaldo. Vice-President, Cash Processing, 507 Prudential Road, Horsham, PA 19044 Horsham (215-441-2620).

2. State the name, title, alias, business and home address and telephone number and job description of each person, whether an officer, partner, director, employee, or agent or contractor of Defendant who contacted Plaintiff, Deborah Belle, in an attempt to collect a debt.

**RESPONSE TO INTERROGATORY NO 2:**

NCO objects to the Interrogatory as overbroad and to the extent it seeks information irrelevant to the allegations contained in the Complaint. Notwithstanding said objection, according to NCO account records the following collectors had contact with plaintiff on the subject account: Jeffrey Ewald, Collector, NCO Financial Systems, Inc., 2527 Sheridan Ave., Apt. #4, Tonawanda, NY 14150; Don Julius, Collector, NCO Financial Systems, Inc., 150 Crosspoint Parkway, Getzville, NY 14068; Sarah Celfo, Collector, 500 North Franklin Turnpike, Ramsey, NJ 08026

3. State the legal name, business and home address and telephone number and job description of Mr. Ewald, or any person who had ever used that or another name, who spoke with Plaintiff, Deborah Belle, regarding her account that is the subject of this suit.

**RESPONSE TO INTERROGATORY NO 3:**

See response to Interrogatory No. 2.

4. If any individual who contacted Plaintiff is no longer employed by Defendant, state the date of and reason for termination of employment of such individual, as well as the last known address and telephone number for that person.

**RESPONSE TO INTERROGATORY NO 4:**

NCO objects to the Interrogatory as overbroad and seeking information irrelevant to the allegations contained in the Complaint. Notwithstanding said objections, Mr. Ewald, identified in response to Interrogatory No. 1 is no longer employed by NCO. NCO records indicate Mr. Ewald's separation date was June 6, 2002 – abandoned job.

5. State the names, aliases, job title, business and home address and telephone numbers for those individuals who have left your employ within the last two years who had any knowledge of the facts of this case.

**RESPONSE TO INTERROGATORY NO 5:**

NCO objects to the Interrogatory as vague and overbroad. Notwithstanding said objection, NCO has not identified any individuals who have left NCO's employ within the last two years who had any knowledge of the facts of this case other than Mr. Ewald.

6. State the names, aliases, job title, business and home addresses and telephone numbers for those individuals who have left your employ within the last two years who were involved with post-dated check payments from debtors to Defendant.

**RESPONSE TO INTERROGATORY NO 6:**

NCO objects to the Interrogatory as vague, overbroad, burdensome, irrelevant to the allegations contained in the Complaint. Notwithstanding said objections, NCO has no reasonable means to identify former employees that may have been "involved" with postdated check payments. At any given time, NCO employs over 7,000 collectors in over 60 offices throughout the United States collecting some 60 million active accounts. Postdated checks from debtors are routinely accepted and processed. Different departments and numerous personnel, including individual collectors, are "involved" in the solicitation, acceptance, verification, processing and presentment of postdated checks.

7. State the names, aliases, job title, business and home addresses and telephone numbers for all individuals employed by Defendant from September 11, 2001 to December 31, 2002 who had any knowledge of the facts of this case.

**RESPONSE TO INTERROGATORY NO 7:**

NCO objects to the Interrogatory as vague and overbroad. Notwithstanding said objections, in addition to the persons identified in response o Interrogatory No. 2, the following persons are documented as having taken some action on the account during the referenced time period: Charlene Fitzpatrick, Collector, NCO Financial Systems, Inc., 150 Crosspoint Parkway, Getzville, NY 14068; Maryann Prawel, Client Services, NCO Financial Systems, Inc., 150 Crosspoint Parkway, Getzville, NY 14068

8. State the names, aliases, job title, business and home addresses and telephone numbers for all individuals employed by Defendant from September 11, 2001 to December 31, 2001 who were involved with post-dated check payments from debtors to Defendant.

**RESPONSE TO INTERROGATORY NO 8:**

NCO objects to the Interrogatory as vague, overbroad, burdensome, irrelevant to the allegations contained in the Complaint. Notwithstanding said objections, NCO has no reasonable means to identify all employees that may have been "involved" with postdated check payments during the referenced time period. At any given time, NCO employs over 7,000 collectors in over 60 offices throughout the United States collecting some 60 million active accounts. Postdated checks from debtors are routinely accepted and processed. Different departments and numerous personnel, including individual collectors, are "involved" in the solicitation, acceptance, verification, processing and presentment of postdated checks.

9. Identify and describe each document known to Defendant that is related to the account of Plaintiff, Deborah Belle.

**RESPONSE TO INTERROGATORY NO 9:**

NCO objects to the Interrogatory as overbroad, burdensome and irrelevant to the allegations contained in the Complaint. Notwithstanding said objections, attached are copies of NCO's account notes (Exhibit "A"); form letters of the type sent to plaintiff (Exhibit "B"); American Express

Individual Complaint Detail Form (Exhibit "C"); Ewald Rebuttal Statement (Exhibit "D"); NCO Complaint/Incident Report (Exhibit "E"); Raimondi & Orton correspondence (Exhibit "F"); Belle correspondence (Exhibit "G"); Simmons Management Group correspondence (Exhibit "H"); Home Properties correspondence (Exhibit "I"); Mid-Atlantic Account Adjustment Notice (Exhibit "J"); NCO 84 notice (original) (Exhibit "K").

10. Identify the number of individuals who provided payments to the defendant through the U.S. Mail (a) prior to September 11, 2001 and (b) after September 11, 2001.

**RESPONSE TO INTERROGATORY NO 10:**

NCO objects to the Interrogatory as overbroad, burdensome, and irrelevant to the allegations contained in the Complaint. Notwithstanding said objections, NCO has no means to identify the number of individuals who provided payment by mail before and after September 11, 2001. Accounting records are maintained on a cash accrued basis only and are not segregated or tracked by method of payment.

11. Identify the number of individuals who provided payments to the Defendant via post-dated checks given over the telephone (a) prior to September 11, 2001 and (b) after September 11, 2001.

**RESPONSE TO INTERROGATORY NO 11:**

NCO objects to the Interrogatory as overbroad, burdensome, and irrelevant to the allegations contained in the Complaint. Notwithstanding said objections, NCO has no means to identify the number of individuals who provided payment by post-dated telephone check before and after September 11, 2001. Accounting records are maintained on a cash accrued basis only and are not segregated or tracked by method of payment. All post-dated checks received by NCO are logged by the cash department without specification as to how the post-dated check was received (mailed or telephoned). When the check becomes current, it is presented for payment, posted to the account and the log entry is deleted.

12. Identify the names and addresses of those individuals who provided payments to the Defendant via post-dated checks given over the telephone after September 11, 2001.

**RESPONSE TO INTERROGATORY NO 12:**

NCO objects to the Interrogatory as overbroad, burdensome, and irrelevant to the allegations contained in the Complaint. NCO further objects to the extent the Interrogatory calls for production of debtor information that is confidential pursuant to Fair Debt Collection Practices Act, Fair Credit Reporting Act, and other federal and state laws. Notwithstanding said objections, see responses to Interrogatory Nos. 10 and 11.

13. Identify or estimate the number of written correspondence received by Defendant per day or other measurable time period through the U.S. Mail (a) before September 11, 2001 and (b) after September 11, 2001.

**RESPONSE TO INTERROGATORY NO 13:**

NCO objects to the Interrogatory as overbroad, burdensome, and irrelevant to the allegations contained in the Complaint. Notwithstanding said objections, NCO has no reasonable means to identify the number of written correspondence received by Defendant per day or any other measurable time period through the U.S. Mail (a) before September 11, 2001 and (b) after September 11, 2001. NCO does not track the number of pieces of mail correspondence received within a given period of time. NCO can provide an estimate of the number of pieces of mail currently received at a given office, but would have no historical data. By way of example, the Horsham office currently processes approximately 10,000 pieces of mail per month, excluding checks. The Ramsey office currently processes approximately 150 pieces of mail per day on American Express accounts alone.

14. Identify and describe any documents used to describe, record or establish Defendant's methods and techniques or policies used in the collection of consumer accounts form January 2001 through the present date, and the date of each or any change in these methods.

**RESPONSE TO INTERROGATORY NO 14:**

NCO objects to the request as vague, overbroad, burdensome and irrelevant to the allegations contained in the Complaint. Notwithstanding said objections, collections practices and procedures vary depending on the client and nature of the account. Generally, collectors are required to follow the collection guidelines described in the corporate employee handbooks and training materials (attached as Exhibit "L"). Activity on an account is recorded on the account notes, identified in response to Interrogatory No. 9. Collectors that work American Express accounts are also required to follow procedures set forth in the American Express training documents (attached as Exhibit "M"). The American Express training documents are client specific and are used in addition to the collector training documents published by NCO. When JDR Recovery merged with NCO, the American Express portfolio remained on the collection system Coll2. The first manual reflects the system commands and language for use on Coll2. On approximately October 5, 2001, NCO converted from Coll2 to CRS. CRS system training was performed using the NCO Collections System Training Manual and CRS Collector Station Manual Release 4.xx. The technical changes - how to use CRS to order copies of statements, create extended records, etc., were provided to collectors in supplemental CRS training and via training updates. In 2002, American Express converted from Laser to RMS, which necessitated additional modifications to the manual. There were no significant changes in the manner in which Amex accounts placed with the Buffalo office are collected as a result of the September 11 tragedy. NCO identified a document evidencing a temporary change to the settlement guidelines implemented by American Express as a result of the September 11 tragedy (Exhibit "N"). American Express also implemented a one-time collector commission bonus of $250 to offset the loss in collector revenue due to the adjustment of settlement guidelines.

15. Identify and describe the procedures Defendant maintains or operates to monitor the communications between its employees and consumers and what is said, or required to be said, during a telephone conversation.

**RESPONSE TO INTERROGATORY NO 15:**

NCO objects to the request as vague, overbroad, burdensome and irrelevant to the allegations contained in the Complaint. Notwithstanding said objections, see response to Interrogatory No. 14. Monitoring practices and procedures vary depending on the client and nature of the account and the office. In the Buffalo office, collectors are monitored by supervisors and managers to assure compliance with the FDCPA and operation guidelines.

16. Identify whether Defendant records telephone conversations with debtors and whether any telephone conversations with Plaintiff, Deborah Belle, were recorded, and if any such recordings existed but were destroyed, describe the date, reason and detail of the destruction.

**RESPONSE TO INTERROGATORY NO 16:**

NCO does not generally record consumer collection calls. NCO does record authorization of phone checks on American Express accounts as a general business practice. NCO is investigating whether a recording of the October 10, 2001 verification exists and is still available, in which event it will be produced.

17. Identify the time, date and substance of any telephone conversation between Defendant and Plaintiff, Deborah Belle.

**RESPONSE TO INTERROGATORY NO 17:**

All contact with the plaintiff, including the time, date and the substance of any telephone conversation are contained within the account notes identified and produced in response to Interrogatory No. 10. According to account records, the debtor called NCO on October 10, 2001, November 5, 2001, and November 26, 2001.

18. State the amount of payments made to Defendant by Plaintiff, Deborah Belle and the dates that such payments were credited, and the precise method or mechanism by which payment was transferred from Plaintiff, Deborah Belle, to Defendant.

**RESPONSE TO INTERROGATORY NO 18:**

A check payment in the amount of $275.00 was posted to the account on October 31, 2001.

19. Identify all internal and external documents regarding Defendant's compliance with the Fair Debt Collection Practices Act.

**RESPONSE TO INTERROGATORY NO 19:**

NCO objects to the Interrogatory as vague, overbroad, burdensome and seeking information irrelevant to the allegations contained in the Complaint. Notwithstanding said objections, see documents produced herewith.

20. Identify by name, position, address and telephone number all non-expert witnesses Defendant proposes to call at trial.

**RESPONSE TO INTERROGATORY NO 20:**

NCO has not identified what non-expert witnesses it proposes to call at the trial.

21. Identify all exhibits Defendant proposes to introduce at trial.

**RESPONSE TO INTERROGATORY NO 21:**

NCO has not identified what exhibits it proposes to introduce at trial.

22. Identity each person whom the Defendant expects to call as an expert witness at trial, state the subject matter on which the expert is expected to testify and the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion.

**RESPONSE TO INTERROGATORY NO 22:**

NCO has not identified what expert witnesses, if any, it proposes to call at the trial.

23. Identify all persons other than Plaintiff, Deborah Belle, that Defendant accepted payments via U.S. Mail prior to September 11, 2001, which Defendant no longer accepted payments from via U.S. Mail after September 11, 2001.

**RESPONSE TO INTERROGATORY NO 23:**

NCO objects to the Interrogatory to the extent it misstates the facts as to the manner in which it would accept payment from plaintiff. Notwithstanding said objection, NCO has always and continues to accept payments by mail, or any other method, from all debtors.

It is hereby certified that the foregoing Answers to Interrogatories are true and correct to the best of the Defendant's knowledge, information, and belief.

NCO Financial Systems, Inc.

By: _____
Lisa Signore, Compliance Manager

Signed before me on
September 9, 2003

_____
Notarial Seal
Mary Ann Armstrong, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires May 21, 2005

Respectfully Submitted,

_____
Jonathan E. Claiborne (Bar No. 347)
Jennifer Lazenby (Bar No. 25886)
WHITEFORD, TAYLOR & PRESTON L.L.P.
7 St. Paul Street, Suite 1400
Baltimore, Maryland 21202-1626
Tele: 410-347-9409
Facsimile: 410-347-9446

- 7 -

*Of Counsel*

David Israel
SESSIONS, FISHMAN & NATHAN, L.L.P.
201 St. Charles Ave., 35th Floor
New Orleans, LA 70170-3500
Tele: 504-582-1500
Facsimile: 504-582-1555

Attorneys for Defendant,
NCO Financial Systems, Inc.

*1513046*